STEWART *v.* THE CHESAPEAKE AND OHIO CANAL Co. and others.

(*Circuit Court, D. Maryland.* March 5, 1880.)

SUIT IN EQUITY—SUIT PENDING IN STATE COURT—DIFFERENT GROUNDS FOR RELIEF.—A bill filed in behalf of the holder of certain corporation bonds secured by a trust mortgage, alleging the refusal of the trustees to proceed under the mortgage according to its provisions, and a misappropriation by the defendant of the tolls and revenues mortgaged, will not be dismissed because a bill, to which such trustees were made parties, had been previously filed in the state court to determine the priorities of the various lien creditors of the defendant corporation.

SAME—PARTIES—NON-RESIDENT TRUSTEE.—A non-resident trustee is not a necessary party to such suit, where four out of five of such mortgage trustees have been served with process and have duly answered.

SAME—SAME—STATE OF MARYLAND.—The State of Maryland is not a necessary party to such suit, although it owned four-fifths of the whole capital stock of the defendant corporation, and held a prior mortgage upon all the property of such corporation, including its tolls and revenues, when, by a subsequent act of the legislature of that state, the corporation had been duly authorized to mortgage its tolls and revenues to secure another loan and issue the bonds in suit for the same, and when it had been further enacted that the rights and liens of the state upon the tolls and revenues of the defendant should be " waived, deferred and postponed" in favor of the bonds so issued, so as to make such bonds, and the interest accruing thereon, preferred and absolute liens on the revenues of the defendant company, until such bonds, with the interest thereon, should be paid.

PER CURIAM. This suit is brought by Daniel K. Stewart, an alien, as a holder of the bonds issued by the defendant company, in his own right, and for the benefit of such others in like interest as may come in and support the suit. The facts alleged and admitted, which are necessary to determine the questions now submitted, are briefly these : The state of Maryland, desiring that a canal should be built from tidewater to Cumberland, in that state, chartered the defendant corporation and became a stockholder in it to the extent of 50,000 shares, each of the value at par of $100. This was about five-eighths of the whole capital stock. From time to time, the corporation being unable to complete the canal with the money received from the subscriptions to its stock, the state loaned to it further sums of money, to secure the repayment

of which it took mortgages from the defendant company upon all its property, including its tolls and revenues. The assistance thus had from the state's liberality proved insufficient to complete the canal to Cumberland, and the state, being unwilling to assist the corporation further by direct contributions of money, passed the act of 1844, chapter 281, by which the defendant was authorized to mortgage its tolls and revenues to secure another loan from the public generally, for which it was to issue its bonds in an amount not to exceed the sum of $1,700,000, which was to be used to complete the canal to Cumberland. And by that statute it was enacted that the rights and liens of the state upon the revenues of the defendant should be "waived, deferred and postponed" in favor of the bonds issued under the act of 1844, chapter 281, so as to make such bonds and the interest accruing thereon preferred and absolute liens on the revenues of the defendant company until such bonds, with the interest thereon, should be fully paid. And the state further authorized the company, by the act referred to, to execute any deed, mortgage, or other instrument of writing deemed necessary or expedient to give the fullest effect to the provisions of the act. Authorized by this act, the defendant company issued the bonds mentioned therein and now in suit, and executed a mortgage upon its revenues and tolls arising from the entire and every part of the canal, to William W. Corcoran, of the District of Columbia, and four others, who having since died, four other citizens of the state of Maryland have been substituted in their places. By said mortgage, in certain contingencies, which the complainant alleges have arisen, the said trustees were to enter and receive possession of the canal, and collect the tolls and revenues thereof, and apply them as in said mortgage directed.

The complainant is a holder of the bonds, which, by the act last above referred to, are made preferred and absolute liens on the tolls and revenues of the defendant company, which are due and unpaid. The bill alleges that the complainant has applied to the trustees named in the mortgage above mentioned to proceed under it, and take possession of the

tolls and revenues of the defendant, according to its provisions, and that they have refused so to do. It alleges, likewise, misconduct on the part of the defendant, and misappropriation of its tolls and revenues; with which charges, at present, whether true or false, we have nothing to do.

The answer of the defendant, together with other defences with which we are not now concerned, sets up that there is a suit now pending between the commonwealth of Virginia and the defendant and others, in the circuit court of Baltimore city, embracing the same subject-matter between the same parties, and files as an exhibit the record of that case.

The mortgagee, Corcoran, by reason of his residence in the District of Columbia, is not made a party to this suit. His four co-trustees under the mortgage have been served with process, and have answered the bill. Under the fifty-second rule in equity, prescribed by the supreme court, the parties to this cause—the facts being as above stated—have, by stipulation of counsel, submitted three questions to the court, which are jurisdictional in their character, the first being: Is the state of Maryland an indispensable party to this suit? the second—Is not William W. Corcoran, one of the trustees, an indispensable party? and the third—Ought not the court to dismiss the bill altogether, and refer the parties to the state court, where a suit is alleged to be pending in which the complainant is a defendant, and where, as is claimed, he could have all his rights in this matter properly adjudicated?

We will consider these questions in the reverse order to that in which they have been presented.

Upon an examination of the record of the case in the state court we find that there was a bill filed in 1867 to determine merely the priorities of the various lien creditors who held the obligations of the defendant company. That bill certainly asked for a receiver of the rents, tolls and revenues of the defendant, but it clearly appears that what was intended by that action was to place in the hands of the receiver such surplus tolls and revenues only after they had been collected by the company, to be by him distributed to the parties after

the court had determined their respective priorities. These priorities were ascertained. The real object of that suit was accomplished, and nothing further has been done in it. It would be impossible for the present complainant, though through the trustees of the mortgage he was a party to that bill, to get the relief there which he seeks here. That bill alleges no such grounds for relief as are stated in the bill before us. Here is alleged fraud, misappropriation of the receipts of the defendant company, and gross misconduct of its officers. It would be impossible in the suit in the state court, unless the whole scope and purpose of it were changed, to give the complainant in this cause his remedy there. He could not file a cross-bill, for in that cause, though concluded by the appearance of his trustees, nothing was to be determined but the priority of his lien. He could not ask leave to amend the bill so as to include the subject-matter of the bill here filed, because he is not a party complainant there; and it appears further in this suit that all the alleged wrongs the complainant seeks to have redressed in this action occurred long after the determination of the questions involved in the suit in the state court, and, since further proceedings in it have been neglected or abandoned, the complainant, in our view, is entitled to have his rights adjudicated here. We have no power to send him to another tribunal, because at a former time, and to determine other rights than those claimed here, he sought the jurisdiction of that forum.

The question next submitted to us is whether we can proceed in this cause without the presence of William W Corcoran, who is one of the trustees in the mortgage which the complainant is seeking to enforce. Corcoran cannot be made a party by reason of his residence in the District of Columbia. Four out of five of the trustees named in this mortgage are present in court. They have been brought here by the process of the court, and have answered. Whether or not Corcoran is an indispensable or even a necessary party to the bill depends upon one fact. If the court can determine, by its decree, the rights of these *cestui que trusts* under the mortgage without deciding what the rights of the trustee Corcoran

are, then the court is at liberty to proceed. But Corcoran has no interest. He is a mere trustee for the purpose of doing a duty upon a certain contingency. He holds a public trust. He has no title to anything. He has no legal estate in any property. His claim for compensation, even in the event of his being called upon to exercise the trust reposed in him, is a matter not fixed by law, but is altogether within the discretion of a court of equity. The *cestui que trusts* are abundantly represented in this action by a majority of their trustees. If but one of them were in court we should consider that their interests were sufficiently protected against any possible harm from an adverse decree.

The next question submitted is whether the state of Maryland ought not to be made a party. The defendant alleges that the state is an indispensable party. We have seen, by the recital of the act of the assembly of Maryland, (Statutes 1844, *c.* 281,) that the state had a mortgage on all the property of the defendant company, together with its tolls and revenues. By that act the state authorized the defendant to borrow more money upon the pledge of its tolls and revenues, and declared that the defendant might pledge the same, and make the debt so incurred a preferred and absolute lien on such tolls and revenues until the same was paid.

This is a suit against the defendant company to enforce the pledge which the state authorized it to make, and which it did make, with the complainant. It must appear to every one who considers the circumstances under which the waiver of the state lien was made, and these bonds issued, that no one would have taken them if it had been understood that in order to enforce the lien there was a necessity to do what it was impossible to do, namely, make the state a party to the proceedings. Maryland waived its lien. She agreed with the defendant company, not with the bondholders, that it might make such bargain as it could with the bondholders, and that neither she nor her lien should stand in the way of enforcement of the contract against the canal company. Under this authority and agreement—which was by public statute—the defendant contracted with the bondholders. It

pledged the revenues and tolls upon which the state had theretofore a prior lien as between the canal, its stockholders and itself. This suit is to compel the defendant company to fulfil the obligation it then entered into. It would be a gross deception on the part of the state to plead that while she waived her lien she never intended to have the mortgage of the tolls enforced. The state does not set up this defence, but the defendant company seeks to shield itself behind it. In our judgment, the state of Maryland, when it authorized the defendant to deal with the public under the act of 1844, chapter 281, and to borrow money by the pledge of its tolls and revenues, waiving its lien, said that to the extent of the loan the state had no interest in the property of defendant. All the state's prior dealings with the defendant were not to be considered. All the rights were waived, sovereignty and all, and were subordinated to the contract of the purchasers of these bonds with the defendant company.

The purchasers of the bonds dealt with the canal company, the now defendant, and it ought not to be allowed to set up any interest of the state to defeat the enforcement of its contract. All questions of the distribution of the surplus revenues of the canal company have been conclusively determined by the state court in the action above alluded to, in which the state was a party. The bonds which complainant holds are an undisputed first mortgage debt, having priority over every claim of the state, which lien and priority have been determined by the state courts. If the state has any interest whatever which it thinks is not here properly defended by the defendant, whom she authorized to deal in her behalf with these bondholders, she is at liberty to come here and in this court protect her rights. But the defendant is not to be allowed, after making a contract which was authorized by the state, to set up by way of defence against its enforcement that the state is not made a party, and cannot be without the state's consent, and thus defeat the contract. This complainant did not deal with the state. He dealt with the defendant company. It is against it these complainants seek to enforce their claim, and the defendant, having made a

contract of its own by the authority of the state, has no right to set up the state's supposed interest to defeat an action to enforce it.

No relief sought by the bill would, by any decree we are asked to pass, conclude any rights of the state of Maryland. We are of opinion that these objections to the complainant's bill must be overruled.